St. Lucie County v. Morgan Stanley I'll give you all a minute. All right, Ms. Reed, when you're ready. Thank you, Your Honor. Your Honor, Noelle Reed on behalf of the underwriter defendants. May it please the Court. The District Court in this case erred in two important respects when it certified a broad class that included purchasers in five different secondary offerings of equity and debt. First, the Court did not undertake the rigorous analysis required by the Supreme Court in Comcast v. Barrett with respect to two issues. The individualized issues related to tracing shares in the equity offerings, and the individualized issues related to the bond purchasers showing that they made domestic purchases of bonds. Had the Court conducted that analysis, had the Court looked at the record evidence, as to tracing there was only evidence that there were millions, hundreds of millions of shares in the market, and that these were all secondary offerings, and so those shares were all in the market before these five offerings, it could not have concluded that tracing wouldn't predominate over other issues in the case. And as to the notes, the only record evidence was a very confusing record with respect to one named plaintiff's purchase of notes, a German plaintiff who purchased notes apparently in London based on the purchase documentation but testified that the purchase documentation was inaccurate. Had the Court analyzed that it did, it could not have reached the conclusion that it did. But St. Lucie says this would only impact a very small percentage because there's causes of action that don't care about tracing, and then there's also the fact that some of them can trace because they bought them directly from the underwriter defendants. Yes, Your Honor, and that could have justified the certification of subclasses or different classes for different purchases of different securities offerings, but that's not what the Court did. The Court simply lumped them all together. In addition, one of the distinctions that the plaintiffs make in that respect is to say that these same class members will also have Exchange Act claims, but as the Court is now aware, it appears the Exchange Act claims will be settling out, and so that issue will not save them from being members of the class. Let me ask you about that. I'm just wondering procedurally, do we need to actually fully either affirm or remand for some purpose? Do we send that along with it to address the settlement, or where are we on all that? It's an excellent question, Your Honor. We've been hearing for many months that this settlement was on its way, that the preliminary settlement would be filed with the district court shortly. We don't know what the timing is on that, and perhaps that's a question for the plaintiffs, because the answer to that question may determine whether or not it should be formally severed at this point. I do know that at this point there's no preliminary settlement that has actually been filed, and so the case carries together. The issues also, the repose issue in particular, does affect the Exchange Act class as well, and so I'm not certain you could fully sever the issues. Okay. So then that, you argued for having this oral argument. Yes. Okay. And it was not my preference to do that, but I thought, well, you're arguing that you're sitting there in the district court rolling along and you want your day in court, so here we are. But, I mean, let's say that we all came to a decision this afternoon, and whoever's assigned the case is a very fast writer and has an opinion ready to go tomorrow, what are we supposed to do with it? It depends on how the court rules and which issues the court reaches and whether the court vacates or reverses, and we would submit that you could reverse, and on the record that's been submitted. But, I mean, even if we were to affirm on the tracing, for example, the fraud on the market thing is still floating around out there. If we were to reverse and remand on the tracing thing, the fraud on the market thing is still floating out there. So I'm trying to understand, you know, how does that paragraph of the opinion read? Certainly, Your Honor. To be clear, the Exchange Act issues do not affect my clients. It's my issues that also affect the Exchange Act client, the Exchange Act defendants. And so from our perspective, and we offer this as an alternative, when we ask that the court go ahead and hear this appeal, you certainly could sever. I think that is an available alternative. Your point is you can defeat Klasser regardless of whether the others can defeat it and not vice versa. Correct, Your Honor. We do not have, because we're in Section 11, Section 12, we do not have the arguments that the Exchange Act defendants made in their appeal. They are separate and independent of ours. They, however, have our arguments. Okay. So we can sua sponte sever? Yes, Your Honor. And do whatever we're going to do and leave the rest, what, pending in our court? I think that's up to the plaintiffs then and the Exchange Act defendants, Your Honor. Yes, I believe you could leave the rest pending in your court. Okay. I don't think there's anything that would bar that. Okay. So to go back to the predominance inquiry, the Court, the Supreme Court couldn't have been more clear in Comcast that a rigorous analysis is required, particularly as to the predominance element of the Rule 23 requirements. And in fact, that really didn't do anything to add to this Court's jurisprudence in Gene and Gene, which already required that rigorous analysis. The plaintiffs contend that the district court, the court's finding, and this is a quote from their brief, was well-reasoned, supported by controlling case law, and based on a thorough review of their record. The court's analysis of tracing was precisely four sentences long, only one of which reflects, I suppose, analysis. It is a sentence that says tracing is a merits issue and need not be considered, and it is supported not by controlling case law, but by a Now, the plaintiffs — I take it you all cited IPO and Dynagy and Crimm in the district court. We did, Your Honor. We did, Your Honor. Any idea why the district court didn't even mention them? No, Your Honor. She did not discuss them. She did not discuss the underlying facts of the tracing issue, the number of shares. She did not mention the Crimm case, which demonstrates the difficulties of tracing shares in the Section 11 case. There simply isn't an analysis there. And the cases that she — the case that she did rely on, the Wallace case, actually does not discuss tracing in a predominance analysis. It is in a different section. And the other cases that the plaintiffs now ask you to look at in support of the argument, first, weren't discussed by the court, but second, those cases were almost — were all, really, pre-Comcast, and many of them rely on the Eisen case in the Supreme Court for the arranging discussion of the merits. But in Walmart, footnote 6, the Supreme Court noted that courts keep citing that language from Eisen and that they are wrong when they use that to justify not inquiring into the merits on a Rule 23 inquiry, and that the plaintiffs don't address that in their brief. The record evidence on tracing showed that as of March 1, 2011, which is the beginning of the purported class period, 356 million outstanding shares of Cobalt stock were in the market. That's at the — the record at 8131. That's because there was an IPO in 2009, which is at the same record site. Those shares have no unique identifying characteristics, which is at the same site in the record. They're a fungible mass. And so the CRIM principle is going to apply here, and tracing for all those aftermarket purchasers is going to be virtually impossible. So your view is we're not just supposed to vacate, assuming everything you've said is correct, we're not just supposed to vacate based on the lack of analysis and give the district court a chance to do a do-over? You're saying reverse because the record today forecloses a predominance finding? Yes, Your Honor. Yes, because the plaintiffs in response briefing on the motion to certify the class proffered nothing to carry their evidentiary burden. That's how the Court discussed it. Justice Scalia in the Comcast decision said it is an evidentiary burden on the plaintiff's part. They put up nothing in response to the evidence showing how many shares were in the market and how difficult it would be to trace. On that record, I think you can reverse rather than vacate. I'd like to make sure I get to the other two issues. What of their point that — I'm trying to remember their briefing — that these weren't all the same shares, that there were actually ways of disaggregating the various shares because they had different terms? So in other words, it's not a fungible mess because they're actually segregable? I think Judge Hoyle may be referring to the notes. I think that one of the arguments they make is you don't have to reverse, you don't have to decertify the class as to the equity offerings because some members of the class are there because they purchased notes and the notes are unique. And they are. There's no question that's correct with respect to the notes. However, again, the judge did not certify two classes. The judge certified one class that included equity and shareholders. So she still would litigate — Your point is that may or may not — I'm not going to put words in your mouth — that theory may or may not support a subclass, but it does not support affirming this class. Correct. Absolutely correct. But isn't that then a remand? Because we can't just reverse and say no way, no how, no class if there could be a subclass that would be appropriate. It's not, and that brings me perfectly to the domesticity argument, which I'll make briefly because I do want to reach the issue of CalPERS and its impact on the statute of repose. The notes class suffers from a different infirmity with respect to predominance, which is that the Court did not evaluate at all the individualized inquiries required to establish that note purchasers purchased in domestic transactions. The Court acknowledged that Federal securities laws apply only domestically under Morrison, but with no citation or discussion of the record, the Court simply concluded it was unclear whether any members of the class purchased abroad. Now, we did put in record evidence that the notes were traded over the counter, so they were not traded on an exchange. That's at 8344. That Universal, the named plaintiff, was in Germany and that it appeared from its purchase documentation it purchased in in response to say maybe there's one plaintiff, there's some mud around where they purchased, but other purchasers, it will be clear. So again, with respect to this issue, the plaintiffs didn't carry the burden. But did you properly bring that to our attention on your interlocutory appeal? Did you properly raise that? We did, Your Honor. It was in our petition, and recall that both the CalPERS issue that we raised and the Morrison issue that we raised, both came out of cases decided after Plasser was decided. And so we were already, we were doing the petition and moving to reconsider in the district court to allow the court at least the opportunity to consider. Right. But we have jurisdiction over the order. Yes. So I think that would address jurisdiction, but then don't you have a duty to raise these issues in the filings with us? We did sufficiently raise it, Your Honor. It is referenced, and the plaintiffs acknowledge, and I apologize, I don't have the site offhand, but we did reference it in our petition. And again, because we did the petition and then we had the Petrobras Supreme Court, I'm sorry, Second Circuit decision, our district court had relied on the district court decision by Judge Rakoff in Petrobras, and then the Second Circuit decision came out saying that Judge Rakoff was incorrect. And again, that was fully briefed on the motion to reconsider, and so the plaintiffs were fully aware of it. They had every opportunity to brief it. I just want to mention briefly the court also relied on the Valentini case in the Southern District. We would submit that's overruled by Petrobras, and that frankly, even if she wanted to rely on it, it doesn't set up a per se rule that if there's any linkage between a note and equity, you therefore have the note is the equivalent of the equity that's traded on a list on a domestic exchange. That court, the Valentini court, actually went into an extensive analysis of why that particular note, which floated with the value of equity, which our notes do not, why that was the equivalent of this listed stock. Again — So you're saying it's fact specific? It's fact specific. The court should have analyzed it, but this court shouldn't adopt Valentini in any case. Why isn't the statute of repose a defense that you move for summary judgment on once the class is certified, if it is, or on the individual — well, I guess you don't have it on individual defendants except for one point. But if the class is certified and you move for summary judgment, and then you have the benefit of the fact that there's a class if you win, why isn't that where the statute of repose comes up as opposed to on this? I certainly think it could come up in that respect, but I don't think there's any reason that it can't come up in challenging the certification of a class. I think if CalPERS applies, as we say it applies, and that is based on American pipe in the first instance, and I think it's notable that the plaintiffs in their brief never even cite American pipe. They talk about the other cases, the opt-out cases, but — Why isn't that exactly a merits issue, where it is common and la, la, la? Why would that be something, as opposed to the tracing where you're saying we're going to have to trace each person? The statute of repose, you're making a blanket statement. Everybody except the named plaintiffs is out. That sounds pretty common and pretty It's a fair point, Your Honor, but it should also block certification of a class. Otherwise, the contrary result would be — the result would be, remember, this district court has refused to stay, merits discovery pending class cert, refused to stay this case pending this appeal. And so we are litigating to conclusion. If we are forced to wait to raise the repose — I'm sorry, to wait to raise the repose issue, until summary judgment, we will be effectively deprived of relief, and that is — A court that says you can't file summary judgment when you want to is the court that says you can't? I mean — I think that the time it would take to litigate a summary judgment at this point, recall that CalPERS was very recently decided, the time it would take to litigate that, this case would be proceeding on, and what would be the point? Why wouldn't this court address, if this class is not a viable class, why wouldn't this court address — Well, that and how appeals work. We don't get to reach out and do stuff that sounds fun, but isn't really what we're supposed to do. But I take your point as you could move for summary judgment. It doesn't mean the district court will rule on it. That's correct, Your Honor. And so we may be deprived of relief and forced — But that's true in every single case where a defendant's running around crazily thinking they should have won on summary judgment. I mean, that's just how the system works. But, Your Honor, we have Rule 23F, whose purpose is to allow us to take up an interlocutory appeal so that we do not suffer the interim effect of a pending class action. The Supreme Court recognized that in Microsoft as well. And I apologize, Your Honor, my light is on. So unless — Well, you don't seem that terrified, so the interim hasn't really worked on you. But — Well, we're the only — we're the only defendant — Particularly if you think you're going to win the summary judgment either in the district court or on appeal, that makes you less terrified. But that's fine. I appreciate that. The lawyer is confident the client might be terrified. There you go. Okay. Mr. Antwistle. Good morning, Your Honors. May it please the Court, my name is Andrew Antwistle for the plaintiffs' appellees. The — I feel like I must be missing something big because you act like the district court made this big analysis of tracing and all of that. And I have record 5153 to 5154, which is about a paragraph on tracing that just says it's a merits issue. So where is this extensive involvement that you go through in your brief in the district court's actual opinion or somewhere else? I mean, where is that that I can find? And so I think, Your Honor, there's no question that Judge Atlas dealt with the issue succinctly. I mean, there's no question about that. But she had before her — I mean, this case has been going for 27 months. The briefing, documentation, expert reports, et cetera, submitted on summary judgment, that record was over 1,600 pages of information dealing with all of these various issues, including 12 depositions that related exclusively to class certification, including two experts. You acknowledge this one sentence, this is not rigorous analysis? Well, Your Honor, the one sentence is succinct. There's no question. But — I'm not just talking about word count here. The district court's theory was traceability is essentially never an individualized issue sufficient to overcome predominance. And I think — I'm not sure she went that — that Judge Atlas went that far, but — It's a merits issue that the Court need not consider at the class certification stage. And I think that — It's not about traceability in this case. It's about traceability writ large. I think that's right. And, you know, I think there's — here the Court looked at a very that under Comcast the Court didn't engage in a rigorous analysis to get to the result that's reflected in the decision, I think sort of begs the question. My experience, though, is when a judge has spent, you know, years parsing through tens of thousands of pages, they sort of note that somewhere, because they at least want the appellate court. I mean, I think Judge Atlas is smart. She knows this is coming after us. If she had spent all this time going through the tracing at length and determined that it could be traced and all of that, we would have pages on that. I promise you that. And that's not saying that she's wordy, but just that that's — would have been the analysis. But when you say, I don't need to do this, that doesn't make me think she's gone through the 10,000 pages or whatever looking for tracing. It makes me think, I don't need to do this, so I didn't. Well, and I think — I think that what Judge Atlas really did, having looked at a very voluminous record, was determine that the issue of tracing is really, for this purpose, definitional. In other words, there's no — she observed that there's no question that to fall within the definition of the statute, you have to have purchased the securities on the offering or traceable to the offering. And she looked at that and said, just like everything else that goes into the definitional analysis, we're going to deal with that at a later phase. It's no — really no different than saying at the end of the day in any class case, we're going to determine whether securities were bought timely. In other words, were they bought within the class period? Were they, in this case, as the defendants have raised, they talk about Morrison. Now, leaving aside that this case is nothing like Petrobras and leaving aside the second, definitionally, there's no question that you have — Isn't that factually wrong? I mean, in other words, yes, if I'm claiming — so now we've got this class settlement or a verdict or something like that, and I'm a member of the — not me, obviously, I'm the judge in the case, but a judge in the case, but Mr. X is saying that they're a member of the class, then Mr. X would have to show up with their share that's got the right date on it. But that — their point is, okay, yeah, you can do that, but you can't show that that's the share that came from the offering that's been challenged. That's the problem. It's like I can show up with a dollar and say I have this dollar, but I can't say I got that dollar from the plant that makes it in Dallas or wherever they make dollars. And so what the court — you know, here, in this circuit at least, you know, under just out of hand. What the defendants want this court to do essentially is adopt a per se rule that says definitionally — It seems to me that you're arguing for a per se rule. And if I'm wrong about that, please let me know. But it sounds to me like you're saying traceability is never going to be an element on which class will be defeated. And I — Certainly that's what the district court said. And I think as a practical matter, Your Honor, that's true in this sense. It's never an issue that predominates over the common issues. It may be an issue like whether I bought my shares in a certain time period, whether I'm a domestic purchaser, all these definitional types of issues that are going to be analyzed at a later stage of the case. How do you square that with Krim? And I think we square it with — Krim itself says that we're not — Krim itself didn't advocate for a rule that said aftermarket purchasers are not within Section 11. It simply said that we're going to deal with it. Prove it. You're going to have to demonstrate that. But it didn't say up front that this is an issue that predominates. Would you acknowledge that if you take the class definition as is, you have a lot of people who undoubtedly bought shares that are traceable to these offerings, and you have others who undoubtedly did not? There's no question about that, Your Honor. So standing is individualized in this case? Well, it's always — my response to that is yes. It's always individualized in that context. In other words, we're always — we always have to determine at the end of the day, at some point in the proceedings. And I would submit never at Class Cert — pardon me? Standing is something we worry about from day one, isn't it? It is. And, of course, the district court addressed it on the motion to dismiss — at the motion to dismiss stage, and it did it again looking at the certification motion made on the motion to dismiss, and obviously it did it again in this process. But my point is, is that when we're talking about these types of issues that define whether you're within the class or outside the class, that's an issue that's reached later in the proceedings, whether at summary judgment trial or later. And I think here the district court made it very clear that the issues of falsity and materiality, those issues predominate over this issue. I'm not sure I understand, though. Maybe I've misread the class definition. I thought that everybody's in the class whether they actually bought these shares or not. That's the problem with the class not satisfying predominance, is it includes a lot of people who don't belong. Well — For individualized reasons. I think as a practical matter here, obviously, and this is something I think that Judge Haynes alluded to at the very beginning of the argument, the class definition deals with both the Exchange Act claims and the Securities Act claims, and so therefore you have a definition that says you purchase securities during these dates, and with respect to these offerings, they were either purchased on the offerings or traceable to the offerings. And as I think Your Honor observed, we have notes, right, and we have common stock. And right now we're only talking about the common stock. The note offerings are not secondary offerings, and they're obviously traceable. They're a completely different animal. But when we're talking about the common stock offerings at issue here, these are secondary offerings, and there are ways of proving that. And the case law that's in some ways we might not, right? So we can't do it statistically, but we can look at the list, for example, of allocation by those who — by underwriters and brokers, et cetera. But if you define a class by sort of the fact at issue, like all people who were lied to, okay, then that is itself a problem. I mean, you're kind of saying that by defining it as the tracing people, we avoid this issue of traceability, but isn't that exactly kind of circular? And, Your Honor, I think it could definitely be looked at that way if we accept the proposition that tracing is an issue that should be addressed at class certification. And it's precisely the reason why so many courts have said we don't look at tracing at class certification, that we're going to have — we're going to certify a class, and then later we're going to determine in some way whether you are a member of that class or not. But you acknowledge there are cases on both sides of this issue, right? I do acknowledge that there are some cases that have struggled with the issue at various points in time in the proceedings. There's no question about that. And we — and this Court has never opined one way or the other. That's absolutely the case. I think while, you know, there are lots of Fifth Circuit cases floating around in the briefing, you know, the fact is, is that on the narrow issues here presented, the Circuit has never spoken to those issues. So it seems to me that traceability, there are two ways that it could be a class certification. One is when you only have one offering, so that you know, obviously, it all came from that single offering. That's correct. Or two, in a multi-offering situation, you tell a story. You present evidence about how, in fact, all the after — all the aftermarket purchasers must have got it from this one broker because there was only one broker who sold it, and they never sold it again, something like that. Is that — I think that's right, Your Honor, to this extent. When we look at, for example, Rosenzweig says, you know, whether — and Crimm says the same thing, right? Where there's one offering, it's easy, right? We can follow through. And that's the case, for example, with the notes. Each one of the two note offerings are separate offerings, easily traceable. When we're dealing with secondary offerings, as we are with the stock — the common stock offerings here, we have to — at some point, the Court's going to have to figure out how we do that. But both Crimm and Rosenzweig, I think, were pretty careful about saying the statute itself says that you purchase the security or it's traceable to the security. And so we're not going to exclude a class certification, folks, and say you — the showing that you're able to make or not able to make is not something we're going to determine at class certification. We're going to let that go until later in the case. It's a merits issue as to whether or not, definitionally, you fit within the statutory definition. You keep saying it's a merits issue, but it can be a merits issue — I mean, everything's a merits issue. It can also be a class cert issue. In fact, Comcast tells us we often look at merits issues at the class cert stage. It does, but — It's an incomplete argument. I mean, Comcast says it, but at the same time, Amgen, for example, says that when you're dealing with class cert, you're really looking at what the method is. In other words, the district court has broad discretion in determining what method it's going to use to determine as to what the best way to fairly adjudicate the case is. That's why the case law in the circuit in Mullen and others says we give broad deference to the district court. Here, Judge Atlas — Isn't that the problem here is the district court hasn't told us how it's going to look at traceability and prove it — prove this individualized issue in a simple way that doesn't predominate over Comcast. In fact, she says the opposite. I think her point is it doesn't matter. Traceability is just never going to defeat class certification. And I think what Judge Atlas is saying, Your Honor, is that this is not an issue for today. And there are lots of issues that don't get determined at the class cert stage on the merits. I mean, we all understand that. But even Comcast — I think Comcast involved damages, if I recall. It involved — well, one could look at it as a damages type of issue. My point is damages typically comes last. And even that, the Supreme Court told us, damages could be sufficiently individualized to defeat class certification. It can be. Obviously, Comcast is a different kind of case. But it's a very different kind of a situation. And that's not what we're dealing with here. I mean, there's no question that if you're within the statutory definition here — in other words, if you purchase on the offering or you're liability, you're damaged, right? To whatever extent that is. But — and everyone has that issue, right? You're either in or you're out. What we're really dealing with here is an issue that was addressed in some of this case law, which is almost an ascertainability kind of a thing, right? You know, like practicality. You know, the defendants are saying it's impractical to make this determination. And therefore, we're going to take from the district court's hands now this notion that I can look at those issues at a later stage of the case after I determine liability. What if we had a case where salesmen were accused of going out and making misrepresentation to people? So not a securities case at all. It's defrauding people. And the district court defined the class as all people who were lied to and relied on that lie. Would you not agree that that's a bit of a problem? Because these are going to be But you're saying, well, that's a merits issue. If the district court said, well, that was a merits issue, we'll worry about that later. They'll have to come and prove they were lied to and relied on. That sure sounds like a million mini-trials, which is exactly why you don't certify. So how does this differ from that? Well, I think the answer, Your Honor, is when we start to talk about individual issues of reliance, now we're looking at whether or not we have any issues that predominate from a liability standpoint. So here, the district court clearly found that it had core liability issues that predominate regarding falsity, materiality, et cetera. And it said, look, those are common to everyone in the class. The defendants don't dispute this. That's true in Judge Haynes' hypothetical as well. It is and it isn't in terms of reliance. Judge Haynes said there were misrepresentations, they were individualized, there was reliance, it was individualized. And so we don't have, potentially in your hypothetical, Your Honor, liability issues that are common to the class. However — Even if it's a common false statement, every alleged — every class member heard the same exact misstatement, and it's materialized to everybody. The question, I think, in the hypothetical is reliance varies. Some people cared about the misrepresentation, other people would have bought either way. And so in that — Under our precedence, isn't the individualized reliance enough to cost the class? And so under the precedence here, it may be. Right now we're in a different argument. We're in — Aren't we? We're in a different argument. Are we? That's my question. So I think the answer is — Because you can say anything is merits, anything people are going to have to come in and prove something to collect. Isn't this exactly what they're saying about traceability? And so, Your Honor — Like the hypo we've now developed further here. So I think the answer to your question is yes, that's what they're saying. But they're wrong. Because what Judge Atlas did here was, Judge Atlas said, I've got these common liability issues. They're across the entire class. I'm going to look at those first. They're common, they predominate. She made a clear analysis on that front. And then the defendant said, but what about tracing? And she said — It does reduce wrinkles. So the salesmen are telling everybody, buy this cream and you won't have wrinkles. And the people are saying, oh, I still have wrinkles. But the company is saying, no, it's very good, and we really didn't lie. So that sounds very much like a dispute that everybody would be covered by, if in fact it does reduce wrinkles. Then that was a truthful statement, and that would be the defense. But if it doesn't, well, then some people didn't care, they just liked the cream because it feels good. Some people were worried about wrinkles, whatever, whatever. Some people maybe did get rid of their wrinkles, I don't know. So, Your Honor, this actually sounds a lot like what this Court dealt with in Torres. And Your Honor's dissent obviously proposed several hypothetical individual issues that could have existed there. And obviously the Fifth Circuit and Bounce said, no, the issues are common. At the certification stage, we're going to give deference to the district court. The district court is going to get to determine the methodology that is most appropriate to the fair adjudication and efficient adjudication of this case. And here, Judge Atlas said liability. Liability issues predominate. I'm going to look at liability issues first. That's the method I think is most fair and most efficient. And whatever complications I may have or may exist hypothetically or practically with regard to tracing, whether we're dealing with the tracing and the issue we've been discussing or whether we're dealing with, I think, a far simpler issue as to where a transaction took place, which is their Morrison-Petrobras type of analysis. I'm going to look at those. You didn't even say that. Later. The thing you just said. But let me ask you something because we talked around it but never got there. Regardless of how we come out on this, how do we handle the pending fraud-on-the-market settlement, in our opinion? What does that paragraph look like? Well, and so here's where we are with that, Your Honor. We have agreements in principle to settle everything in the case other than the claims against the certain underwriters that are here. Goldman Sachs and Company, as an underwriter, has actually also settled their claims that relate to the Securities Act. So should we rule on this piece and then remand the rest for consideration of the settlement, or what do we do? I don't want this just lurking around. And obviously that's why we came to the Court and said that we think that this should be all held in abeyance. Yeah, but then you're running them around the district court. That was the problem to me. It was like you were having your cake and eating a different cake all at the same time. But the reality being they're running around in the district court. They want a ruling. They think they should be out. They think there's no class to be had or, at a minimum, that it's a much smaller class. So that's the problem. You've got that going on. What do we do about this piece, the fraud? If you have a settlement in principle, it's going to have to be approved by the district court. Why not send it back and say we affirm here and remand or we reverse-slash-vacate-slash-whatever and remand the fraud on the market too? Well, and so we think with regard to the other issues that were raised on appeal, the ones that have been all held in abeyance, they should stay held in abeyance until we get the matters before the district court. And at that point, those can be withdrawn. Why not send it back to the district court and the district court can hold them in abeyance? I mean, I don't understand why it has to sit up here when there's nothing for us to do. Well, I mean, as a practical matter, those appeals have been filed and shortly, as soon as they're submitted to the court, we've been advised the defendants are going to take the appropriate actions. But everything just happened a little bit too quickly, which is why in the first instance we had asked that it be held in abeyance. And so I understand that sort of the way this has happened and the requests made by the underwriters have created some administrative issues in this context. And your solution is? And my solution is that you affirm, right? I mean, that's the easy solution. But even if we affirmed on this, that wouldn't change the fact that we still have this piece over here with this fraud on the market. And the piece that relates to the fraud on the market, et cetera, that were raised by the other defendants will then fall by the wayside when those appeals are withdrawn, which will happen as soon as the settlements get filed. When is that? And it should happen very quickly, Your Honor. I confess to you that the delays that have happened below are part, again, in a sense procedurally, because folks have been working to try and accommodate issues that have been raised by the non-settling underwriters, right? This happens in these cases, you understand, with borrowers, et cetera. But that should happen very quickly. Can we get a deadline out of you or something? I mean, I don't think we'll have an opinion tomorrow, to be fair. But we don't like to just sit on stuff. I know maybe lawyers think we do, but we don't. We like to get stuff out as soon as we can get it out. And I don't want to do anything with this piece that affects the settlement. But at the same time, I just don't want that floating around. I understand that, Your Honor. And I think we should be before the district court with the papers submitted on the main settlements within two weeks, is my guess. You'll let us know. We will let you know directly in that regard. And if I may just go ahead. You said you would love to affirm, and I get that. But I think your real solution, administratively speaking, was to abate the case. Is that what I heard? Yes, yes. Would you be open to staying the district court proceedings? Because in fairness to the other side, they're noting that it's unfair to abate when proceedings continue. Why not do both? Abate here, stay in the district court? Well, I guess the answer would be, Your Honor, in fairness to the underwriters, if this court abated all of the proceedings, in other words, if we abated everything, even after oral argument, then we would agree to abate in the district court as well until we could get the other piece cleaned up. So I think that would be fair if Your Honor has decided to do that. I suggest you clean up the other piece. I'm working hard on it, Your Honor. I don't like holding stuff out there. And I understand that completely. I started on the trial court in 1999, and there was stuff that had been stayed pending some other something since, like, 1992. I didn't find that role. No, and I appreciate that. And Judge Atlas, as you know, doesn't like to hold things either, which is why she hasn't stayed the case. We've kept it moving, and this is the only piece. And procedurally, we are now finished with fact discovery related to the underwriter case, and now we're in expert, you know, in expert land. So Your Honor was right. Summary judgment is around the corner, and things are moving, and they could take whatever actions they wanted if they thought so. If I could just ---- I mean, they're saying that's kind of cart before the horse because they really don't think they should be there. So, yeah, they could file summary judgment. They don't have experts, but they feel, and they're spending money, money, money, that they don't think they should have to spend, and they think you're just trying to get them to settle, which you probably are, and that's fine. Well, but as a practical matter, the only argument that they're really making that at least they sort of put in that basket of we don't think we should be here at all is really this statute of repose argument, which has no traction whatsoever. I mean, CalPERS doesn't stand for that proposition. American Pipe makes it clear that a class case is commenced when you file the action, and it's subject to the definition. And so whatever havoc that may wreak, it may wreak. I kept you late. Unless my colleagues have something else for you, we'll let you go. Thank you. Okay. Thank you very much, Your Honor. I appreciate the time this morning. Ms. Reed has saved five minutes for rebuttal. Just to get the administrative piece out of the way, would you all be open to abating the appeal and staying district court proceedings? Yes, Your Honor. Provided the stay is pending final approval and appeals of the settlement. It can't be that they get to reopen it. Remember, that process takes quite a long time. Understood. In other words, a situation, a stay where your 23F rights are fully intact. Precisely, Your Honor. If that were the case, yes, we would be open to that. I want to go back and address both some points that Mr. Entwistle made and just briefly questions that the panel asked of me when I was up before. The CalPERS question presented was on page one of our petition. The Morrison question was on page seven to the question of whether we raised it. The court has asked this question about, and Mr. Entwistle briefly addressed it, about the repose issue. Aside from just the practical reality, and recall, too, that the court rejected CalPERS and said it's limited exclusively to opt-outs, which it clearly is not on its face. And so we would lose summary judgment and, again, be deprived of the right. We would litigate a class case fully and then only to find, if the court agrees that the Supreme Court has said that statutes of repose can't be told, only to find we had no class. But more importantly, Rule 23 certification is how absent class members join the class action. And so it is improper to certify a class. It's effectively a joinder of all of those absent class members at a point when they don't have claims because they are barred by repose. That's made clear by the Supreme Court repeatedly, most notably in Smith v. Bayer, which cites Justice Scalia's dissent in Devlin and says that no one was willing to advance the novel and surely erroneous argument that a non-named class member is a party to the class action litigation before the class is certified. CalPERS itself says if the filing of the class action brought included individual actions, it would have sufficed for the American pipe court to note the date on which the class action was filed and deem all subsequent individual actions proper regardless of when filed. You just can't avoid the fact that the Supreme Court has repeatedly and clearly said they're not in until they're in. It's not a qualified immunity kind of thing where you're protected from suit. It's just a defense. And just in a general case, forget class certification. Ordinary case, I want to plead the defense of statute of repose. It's a defense. And you live with the world that we have, which is when district courts deny summary judgments that perhaps they should have granted, people end up spending money that perhaps they shouldn't have had to spend. But that's just our system. I mean, you can certify individual legal questions so you could seek that if you lost the summary judgment, and that would be a proper way to get it to us, but I don't think just because we're here and we could do it if we wanted or whatever that that's the right reason. I don't think it's just because you could do it if you wanted. Truly, Rule 23 is the form in which the absent class members join. It is a joinder into the suit. And so you can't use Rule 23 to enlarge substantive rights, and the repose is a substantive right that the defendants have to be free of liability. And, again, Microsoft recognized that the certification expands the defendant's liability. So our position would be that it is effectively using Rule 23 certification to expand the rights of absent class members. So what do you say about his argument that there's so many predominant issues that tracing doesn't prevent certification, even assuming, arguendo, that it's a complicated, messy, individualized goo? So the first answer is the court had to look at that, and it didn't. It didn't compare them. When Mr. Entwistle says the court found that tracing did not predominate, it didn't. It said, I will not look at that issue because it is merits. That's not the rigorous analysis that's required. Gene and Jean made clear that the way you do the predominance analysis is you look at what are the common issues, and then you look at the individualized issues, and you compare what's the respective effort required to litigate one or the other. Judge Ho, I believe it was you that correctly noted predominance is almost always a single issue, and there are almost always multiple common issues. Reliance is a single issue that can defeat predominance if there's no entitlement to fraud on the market presumption. So it's always going to be a single issue that typically predominates over common issues. The other issue that frankly infects all of these questions is if this class, this amorphous class with people whose claims are barred by repose, and by the way, the Exchange Act has a much longer statute of repose. It's five years. So only four of the five offerings, the Exchange Act class, would be barred for. So now what you have is a notice problem because you have a class action proceeding with people who are going to get notice that you might be in the class or you are in the class if your shares are traceable to or she didn't even specify domestic purchases for the notes. But these people are going to get notices who are barred by repose, who are not traceable and don't know what traceable means, who don't know that domestic purchases are required, and who may waive other rights, not pursue other claims, not pursue their own individual actions because they will not realize that they are not part of this class. You can't defer that decision. Apologies, Your Honor. I was hoping you'd get to a final. Okay. Thank you very much. We appreciate both sides' arguments. This case is submitted and that concludes.